We'll hear argument next and the motion in number 22, 1046 Jet Experts v. Asian Pacific Aviation Limited. Mr. Collins, whenever you are ready. Thank you, Your Honor. Your Honor, Brendan Collins on behalf of the appellants. This appeal presents a straightforward issue of contract interpretation, particularly of an aircraft purchase agreement. That contract interpretation is subject to de novo review. Despite the express contractual provision in the seller's default clause in the section 7.5.1 of the APA, or the purchase agreement, which provides that specified expenses and a return of the purchaser's deposit are the sole remedies available in the event of a seller's default, the lower court held that the sole remedy provision was inapplicable because the purchaser was not in default. Your Honor, we respect— Well, that's because there's another provision on the contract that allows the seller to terminate the contract in the event of the purchaser's default, right? And this provision of the contract you're talking about, 7.5.1, says when the seller defaults, the purchaser may elect to terminate the agreement of that section, right? It says— So it does seem like at the end of that paragraph there is the sentence that says purchaser's rights to receive the above referenced amounts shall be the sole defaults on seller's obligations under this agreement and purchaser waives any other remedies. But isn't that in the context of a clause that says the purchaser has the option of terminating in the event of the seller's default? No, Your Honor— I mean, normally if a counterparty defaults, the non-breaching party has the option to enforce the contract or to terminate. And isn't that what's reflected here? No, Your Honor. It's not a condition precedent. It simply says, if one looks at the plain language, it says that the purchaser may elect to terminate and then it's entitled to certain specified remedies. It does provide further, however, that the purchaser waives any other remedies that may be available at law or in equity. So, Your Honor, it does not— But why shouldn't we understand that as waiving any other remedies that may be available in the event it elects to terminate because of the seller's default? Well, Your Honor, there's— Like, normally when you elect to terminate in the event of the seller's default, it means you do not, in fact, want to proceed with the contract. You want to receive damages for the other party's default. No, Your Honor— And so this defines what the liquidated damages would be in that instance, doesn't it? No, Your Honor. I think as the language of the court, the district court decision in Deutsch v. Lufthansa addressed this very identical language and recognized it does not say that they waive the right in the event the purchaser elects to terminate. It says in the event of a seller's default. And this is, in fact, a seller's default. And the other provision that expressly applies here as the court in Deutsch v. Lufthansa recognized, if the parties— There's clear language in New York courts. When the parties want to provide for a sole remedy and limit damages, this is the language that they use. When they want to provide for a sole remedy and limit damages. But so in this contract, there also was a section 7.5.2, which also gave the seller the power to terminate on similar terms in the event that the purchaser defaults, right? They mirror each other, Your Honor. They're a limitation of— If 7.5.1 just allowed the seller to terminate the contract and have limited—and pay limited damages. Well, Your Honor, 7.5.2, you're asking in reverse? Yeah, wouldn't it render 7.5.2—well, I guess maybe it's not entirely extraneous, but wouldn't it be of limited importance if 7.5.1 just allowed you to terminate the contract and pay the limited damages? Well, Your Honor, 7.5.2 applies if the purchaser is in default. It limits the seller's remedies. And so they mirror each other. So you understand 7.5.1 not simply to be that when the seller defaults, the purchaser has the option of terminating. But it means this is what happens whenever the seller defaults. If the purchaser opts to terminate, it's entitled to the damages that are specified in there. But you're saying also if the purchaser does not opt to terminate, it's also entitled to the damages that are specified in there, right? If he opts not to terminate, he waives any other remedies that may be available at law or in equity. That's the plain language. Right. So under 7.5.1, your position is if the seller elects to terminate, the seller only gets the specified damages. If, sorry, if the purchaser elects to terminate, the purchaser only gets the specified damages. If the purchaser elects not to terminate, the purchaser still gets only the specified damages. What's the significance of all the language about the purchaser having the election? Well, under the first circumstance, he gets the expenses he's incurred and the return of his deposit. If he elects not to terminate, he waives any remedies that may be available at law and equity. It's their choice. Your Honor, I would note just as a follow-up on that, that this is language that was drafted by the purchaser themselves. So for the argument somehow that this is- Wait, I'm sorry. You say that if the purchaser elects to terminate, they get the out-of-pocket expenses, but if they don't elect to terminate, they don't get the out-of-pocket expenses? Well, Your Honor, it says these are available if you elect to terminate. If you choose not to terminate, it says the purchaser waives any other remedies that may be available at law or in equity. But wouldn't you still be getting the out-of-pocket expenses either way? No, Your Honor, not according to plain language. So if you don't elect to terminate, what happens? You get nothing? You just waive the remedies? The contract is negated, the limitation of remedies. So basically you're saying 7.5.1 allows the seller to force the purchaser to terminate because if the purchaser elects not to terminate, they get nothing. But if they elect to terminate, they get these specified remedies. That is standard language, Your Honor, and we were prepared to present evidence that appears in virtually every business aircraft sales contract that's drafted. Parties are not forced to compel sales of aircraft. Those limitations are available. They're widely recognized in the industry. A decision to the contrary would invite chaos in this area of the industry, Your Honor. Why is that? Help me understand why it's more chaotic to enforce a contract by specific performance than to allow sellers to effectively walk away from contracts whenever they get a better deal. Well, it's mutual, Your Honor. Again, there are limitations of remedies available. Parties agree that in these types of deals, until the sale closes, the parties have options to terminate and liquidate their damages. The same way that- They have options to terminate or liquidate their damages, but they're not compelled. I mean, if one side unilaterally decides to default, you're saying the other side can either terminate and liquidate their damages or get nothing? That's the way the contract is drafted, Your Honor. But under the ordinary circumstances, if either side elects not to perform, there are damages that are available which have been negotiated in advance. Isn't that a very weird way of- Isn't this a very weird way of describing the result? You're saying normally when we say that a party can elect not to terminate, it means they can proceed with the contract. But you're saying if the purchaser elects not to terminate, the- elects not to terminate, the contract is nevertheless terminated and the party electing not to terminate gets nothing. Well, Your Honor, that's- Couldn't the contract just have said in the event of a default by the seller, purchaser shall be entitled only to these damages? Why have all the language about electing to terminate and electing not to terminate? Your Honor, I think that's the effect of what has been drafted. It does not say, and this is important, the purchaser waives any other remedies that may be available in the event the purchaser elects to terminate. It says in the event seller defaults. It's broadly drafted. In the event of any seller's default, and that's exactly what we're presented with here, here the court- the seller made an economic decision to default and to limit its damages as specified therein. Okay. Thank you, Mr. Collins. Thank you. We'll hear from the appellee, Ms. Rockett. Okay. Good morning, Your Honors. If you want to talk about anything other than this topic, let me know. I'm going to address what the actual contract before the court means. It is clear, plain, and unambiguous, just like the district court found. The appellants claim the purchaser has no right to elect to enforce the contract and cannot waive seller's breach. They claim the contract clearly and unambiguously gives them the right to terminate the contract by breaching it, even on the eve of closing, and forcing the appellees to accept the limited remedies in 7.5.1, or as we now hear, to take nothing. This violates multiple rules of contract interpretation as contrary to multiple express contract provisions in this contract. As the court already noted, 7.5.1 expressly states the contract may be terminated by purchaser, and if purchaser elects to terminate, it goes on to describe the remedies. The appellant's interpretation renders that language superfluous. Judge Stanton correctly held that this paragraph, this section 7.5.1, is not applicable to this case because the purchaser's election to terminate is a conditioned precedent that was not satisfied here. If you read the contract, and it's- Well, the contract does say, purchaser's rights to receive the above-referenced amounts shall be the sole remedies available to purchaser in the event seller defaults on seller's obligations under this agreement and purchaser waives any other remedies that may be available to purchaser at law or equity. It does, but by saying the above-referenced damages, you have to look above to the description of the damages, and the damages list says, if purchaser elects to terminate this agreement under 7.5.1. So you're saying that it refers to the above-referenced amounts. It's referring to amounts that are available upon election. And so you should understand the election to be part of that last sentence. Yes, and I'm going to walk you through, unfortunately, the schedule one to the rocket declaration was inadvertently omitted, and that is the contract provisions that disprove the interpretation of defendants, and I'll walk the court through them very quickly. The definition of closing means the consummation of the purchase and sale transaction contemplated hereby. 2.1 agreement. On the closing date, seller shall sell and deliver the aircraft to purchaser. 2.4. This contract is an exclusive right to purchase an aircraft. Effective upon execution, the aircraft shall be subject to purchaser's exclusive right to purchase, and seller shall not list the aircraft for sale in the marketplace or offer to sell or enter into negotiation to sell the aircraft to any person other than purchaser. The language for 4.4, which is going to be controlling as I'll show you, purchaser and seller intend that closing shall occur. It's the intent of the parties that all closing procedures, as described in Article 4, shall be performed or taken concurrently. The seller's representations in 5.1, the seller has not entered into any agreement other than this agreement pursuant to which seller is or may be contractually and or legally obligated to sell the aircraft or interest to any other party, and the further assurances. The seller's representation and warranties expressly provide Section 5.1.5. This agreement constitutes the legal, valid, and binding obligations of seller and is enforceable against seller in accordance with his terms, except, and it lists things that don't apply here. Now here's Section 4.4. Okay, this really ties the entire contract together and drives home the point that the court was discussing. This section deals with closing, and the contract, as you'll see, has numerous provisions addressing different types of breaches during the long process between contract and closing. And here, 4.4 says, failure of any party to perform its pre-closing obligations under Section 4.1 and thus failure of conditions set forth in Section 4.2 and 4.3, unless waived by the party for whose benefit such obligations and conditions are set forth, shall be deemed a breach by the party failing to so perform the remedies for which are stated in Section 7.5 below. Otherwise, on the closing date, the parties shall perform the following closing deliveries in the order presented, all of which collectively shall constitute the closing. So the appellant's interpretation of 7.5.1 doesn't only render meaningless or superfluous language within 7.5.1. It obliterates Section 4.4. Well, you can understand that section as how the closing shall proceed if there isn't a breach by the seller. And he's saying if there is a breach by the seller, then you just get the remedies that's in 7.5.1, right? No, I can't understand it that way because this is a contract that was very carefully drafted. You see throughout the parties just intentionally use the terms may or shall. When they want to talk about options, elections, they use that language repeatedly throughout. And I can show the court those provisions. Here, this paragraph is specifying, okay, for breaches of pre-closing obligations, those damages, if not waived, those breaches will be dealt with under Section 7.5.1. Because here, it is undisputed that the purchaser waived the seller's pre-closing obligation breaches. It cannot be that its remedies are governed by Section 7.5. And in fact, this 4.4 says when, as here, the purchaser waives those breaches, the parties shall perform the following closing deliveries. This definitively establishes the party's intention that the purchaser cannot be forced to terminate the contract or to accept the limitation of remedies in 7.5.1. Now, in addition, the interpretation, so the parties, the option language and the right- What I'm struggling with a little bit of just in terms of the logic of this is that when I look at those passages, you think of like breaches where something's not quite as represented. And the breach here is they're saying we're not going to give you the plane, right? And so the idea, there would be no universe in which you would waive that breach. You might elect to terminate it. I mean, is it really fair to use that provision to deal with a wholesale abdication of the contract, which is what this is? Oh, no, I absolutely agree. To the extent the court is looking for support for the interpretation that we are giving 7.5, it's throughout the contract. And I can walk the court through it. The issue, and again, the judge was correct down below, that nowhere in this contract where the parties are very careful to talk about waivers, terminations, election, et cetera, does it say- And they also say when conduct shall be deemed something, they have the ability, they've proven their ability to do that. They've talked about waiver. Let me find the deem language. So they use language in this contract to deem certain conduct, to constitute an occurrence under the contract, or to dictate that a party shall be considered to be in default. Yet nowhere did they provide for purchaser to be deemed to have terminated the contract under 7.5.1, which is the effect that they're arguing here today. So for example, 3.4 gives you an instance where something shall be deemed an acceptance, shall be considered to be in default. Can you just, because I'm realizing we're running out of time here, walk me through the logistics of, we're obviously not deciding the merits, we're deciding a motion. So let's assume for a second that we deny the transaction is consummated, you folks have the plane, and then you lose on appeal, right? What happens? How does that get unwound? And what about all the expenses of transporting the plane and all of this? Does that just become fodder for litigation back in the district court? It's actually not that difficult. All that's going to be asked is that the contract be enforced in accordance with its terms. So this is a contract the parties were perfectly happy with until they decided that they would like to sell the aircraft to someone else. No, no, but if you lose on the merits. Yeah, if we lose on the merits. So what will happen is right now there's already an executed bill of sale conveyed by the title holder signing over the ownership, the title of the jet, to My Client Jet Experts. Upon closing, that will be released pursuant to the district court order. My Client Jet Experts will be the legal title owner. All FAA regulations will be handled just like they would have been had the sale closed. And the court below also ordered pending appeal that we will hold title to this aircraft as trustee on behalf of the defendants. The appellants here, sorry. This is the current state, okay? The aircraft is currently held by a company in the United States called TVPX as a trustee. On behalf of Asian Pacific, the Chinese BVI SPV that has the beneficial right to fly the aircraft. Here, that trustee role would just be transferred to Jet Experts. Jet Experts is, as the appellants have acknowledged, is properly licensed and registered to own and operate this aircraft. There would be no difficulties whatsoever. As a trustee for the appellant, so if you damage the aircraft or something and they ultimately receive it, you would owe them damages for that damage, is that right? Exactly. Any harm during the pendency is easily compensated by monetary damages. It's easily compensable. And moreover, they haven't addressed this point, but in order to get the aircraft, my client has to pay the $8 million into escrow with the escrow agent under the purchase agreement. So we're not taking their aircraft and flying it around the United States for free. We are concluding our acquisition agreement, buying the aircraft. My clients would be restricted to the contiguous U.S. states, and they're not allowed to alter the aircraft without approval. What happens if your client does not pay the $8 million? We don't get the aircraft. Of course, we would not be in compliance. And what is the status of the aircraft at that point? Well, it is still sitting, unfortunately, outside on a tarmac in China. At the point at which you didn't pay $8 million, I assume that what you would say is if you didn't pay the $8 million that goes into escrow, then you would be in default. Correct. And then we'd be in the world of 7.5.2, in which case the purchaser has defaulted and the seller could terminate. Yes. Okay. There's no world in which this client isn't paying that money into escrow. They've been begging to do it for several months. Okay. Well, you're over time, Melissa. More questions from the panel? Thank you, Ms. Rockett. The motion is submitted. Mr. Governor, may I just address the trust question? I don't think that you—we don't usually do a rebuttal on a motion, but we have your papers. Thank you very—